IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORFOLK SOUTHERN RAILWAY COMPANY,

        Plaintiff,

v.                                 CIVIL ACTION NO.   2:12-cv-05183

NATIONAL UNION FIRE INSURANCE
OF PITTSBURGH, PA, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Westchester Fire Insurance Company's Motion to Reconsider [Docket 78]. For the reasons stated below, Westchester's motion is **DENIED**.

## I.  Background

This action arises out of a train derailment that occurred at a coal loadout facility in Mingo County, West Virginia on July 21, 2009. The plaintiff, Norfolk Southern Railway Company ("Norfolk Southern"), filed this lawsuit seeking coverage as an additional insured for damages resulting from the derailment. Norfolk Southern alleges that it is an additional insured under four separate policies issued by defendants National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), Insurance Company of the State of Pennsylvania ("ICSOP"), and Westchester Fire Insurance Company ("Westchester"). On March 29, 2013, I held that West Virginia law applied to all four insurance policies. (*See* Mem. Op. & Order [Docket 56]).

Westchester moves that I reconsider my previous Order and hold that Virginia law applies to its insurance policy. Westchester argues that a change in circumstances—namely the settlement reached between Norfolk Southern and ICSOP and National Union—warrants reconsideration of my earlier Memorandum Opinion and Order. On October 25, 2013, Norfolk Southern moved to dismiss all claims against National Union and ICSOP, stating that it had reached a settlement agreement with National Union and ICSOP.

## II.  Legal Standard

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Notwithstanding that precept, it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." *In re: C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 649 (S.D. W. Va. 2013).

Although a "motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion," this district has been "guided by the general principles of Rules 59(e) and 60(b)" in determining whether a Rule 54(b) motion should be granted. *Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998). The Fourth Circuit has recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Motions to reconsider "may not be used, however, to raise arguments which could have been

raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* Finally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2810.1, at 124 (3d ed. 2012)).

### III. Analysis

At the outset of this case, Westchester argued that Virginia law applied to its insurance policy, National Union argued that Pennsylvania law, or alternatively Virginia law, applied to its policy with Cobra, and National Union and ICSOP both argued that Connecticut law applied to their other policies. (*See* Mem. Op. & Order [Docket 56], at 4). Norfolk Southern argued that West Virginia law applied to all of the insurance policies in this case. (*Id.*).

In my Memorandum Opinion and Order of March 29, 2013, I applied West Virginia's choice of law rules to determine that West Virginia law governed the four insurance contracts at issue. The Supreme Court of Appeals of West Virginia has articulated this state's test for resolving choice of law questions in contract disputes:

> [I]n a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

*Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 390 S.E.2d 562, 567 (W. Va. 1990). The "more significant relationship" test is informed by the principles stated in § 6 of the Restatement, which sets forth the following factors in subsection (2):

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those

3

states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2)(a)-(g); *Triangle*, 390 S.E.2d at 567. Accordingly, my analysis proceeded as follows: Because the presumption under the "more significant relationship" test is that the law of the state in which the insurance policies were issued governs, I first attempted to determine where the insurance policies were issued. *See Triangle*, 390 S.E.2d at 567. Then, I discussed whether "another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of" West Virginia. *Id.*

I found that the evidence was too unclear to determine in which state the insurance policies were issued. With respect to Westchester's policy, I wrote

the "last event necessary" to make the policy contract binding could have taken place in Pennsylvania, New York, West Virginia, Virginia, or some other state where the contract may have been negotiated and entered into. The facts, as presented by the parties, are too unclear to simply accept the insurers' assertion that the place where they ultimately mailed the insurance policy to is the state where the "last event necessary" to make the insurance policies binding occurred.

(Mem. Op. & Order [Docket 56], at 7). Accordingly, I determined that there was no presumption that the law of any particular state governed.

I next analyzed whether another state had a "more significant relationship" to this case. I found that, even if there was a presumption that Virginia, Pennsylvania, or Connecticut law governed the insurance policies, West Virginia had a more significant relationship to this case under the factors taken from Restatement (Second) of Conflict of Laws § 6:

First, given that the underlying events, injuries and lawsuits all occurred in West Virginia, it clearly has interests that would be furthered by the application of its laws to this dispute, while Virginia, Pennsylvania, and Connecticut do not. *See* Restatement (Second) of Conflict of Laws § 6(2)(b) & (c); *Pen Coal Corp. v.*

4

*William H. McGee & Co., Inc.*, 903 F. Supp. 980, 987 (S.D. W. Va. 1995). Second, the insurance contracts did not include a choice-of-law provision, which weakens the expectations that the parties might have had in applying the law of Virginia, Pennsylvania, or Connecticut to the relevant policy. *See* Restatement (Second) of Conflict of Laws § 6(2)(d); *Pen Coal Corp*, 903 F. Supp. at 987. Third, "insurance law is aimed primarily at protecting policyholders," and Norfolk Southern clearly believes that West Virginia law better protects it than the laws of any other state with potential interest in this litigation. *Pen Coal Corp.*, 903 F. Supp. at 987; *see also* Restatement (Second) of Conflict of Laws § (6)(2)(e). Fourth, the consideration of certainty, predictability, and uniformity of results would be furthered by finding that West Virginia law applies to each of the insurance policies, given West Virginia's interest in the litigation as well as the potential for inconsistent results under similar facts if the court applied the laws of three different states in this case. *See* Restatement (Second) of Conflict of Laws § 6(2)(f). Finally, the consideration of the "ease in determination and application of the law to be applied" clearly favor applying West Virginia law here. Restatement (Second) of Conflict of Laws § 6(2)(g). This court has significant experience in determining and applying West Virginia law, and furthermore, applying a single state's law to all four policies is clearly easier than applying the law of three different states.

(Mem. Op. & Order [Docket 56], at 9-10).

In the instant motion, Westchester makes two arguments. First, Westchester contends that Norfolk Southern's settlement with ISCOP and National Union removes the potential for inconsistent results arising from applying the laws of different states to different policies. Westchester points to my finding that "certainty, predictability, and uniformity of results would be furthered by finding that West Virginia law applies . . . given West Virginia's interest in the litigation as well as the potential for inconsistent results . . . if the court applied the laws of three different states[.]" (Mem. Op. & Order [Docket 56], at 10). Westchester is correct that a single policy, rather than four, does not create the potential for inconsistent results. However, granting Westchester's motion to reconsider would undermine certainty and predictably in this litigation. The validity of my legal holdings in a case does not depend on whether certain parties settle. Parties would have no confidence in legal rulings if they were to change simply because some defendants settled.

Second, Westchester argues reconsideration is warranted because the mailing of an insurance policy determines which state's law governs. Westchester contends that Virginia law should apply because its policy was delivered in Virginia. But my earlier memorandum opinion considered this issue. (*See* Mem. Op. & Order [Docket 56], at 7) ("The insurers' mailing of the insurance policy is not dispositive of [the question of where the contract became binding], because a binding contract could have been created before the insurers mailed the insurance policies[.]"). It is therefore improper for Westchester to rehash this issue. In any event, my earlier decision was clearly based on West Virginia's significant relationship to this case, regardless of any presumption in favor of the law of another state.

In sum, Westchester points to no intervening change in controlling law, no new evidence, and no clear error or manifest injustice. *See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

## IV. Conclusion

For the reasons stated above, Westchester's motion for reconsideration [Docket 78] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 26, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE