IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORFOLK SOUTHERN RAILWAY COMPANY,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:12-cv-05183

WESTCHESTER FIRE INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the court is Westchester's Motion to Reconsider [Docket 99]. For the reasons stated below, the motion is **DENIED**.

**I. Background**

The underlying facts of this case are adequately presented in my February 26, 2013 Memorandum Opinion and Order [Docket 96]. In that Order, I granted summary judgment in favor of Norfolk Southern Railway Company ("Norfolk Southern") on several issues. Pertinent to the instant motion, I ruled that Norfolk Southern was an additional insured under an excess policy issued by Westchester Fire Insurance Company ("Westchester") to Alpha Natural Resources, Inc. ("Alpha") and its subsidiary, Cobra Natural Resources, LLC ("Cobra"). (*See* Mem. Op. & Order [Docket 96], at 7).

To reach that holding, I interpreted a provision in a lease agreement wherein Norfolk Southern leased to Cobra property to construct a loadout facility at Ben Creek Spur. The lease agreement required Cobra to obtain insurance for the benefit of Norfolk Southern in certain

circumstances. The agreement stated that "[s]uch coverage shall . . . have a single limit of not less than $2,000,000 for each occurrence (or such greater amount over time so as to be commercially reasonable) . . . ." (2008 Lease Agreement [Docket 76-4] ¶ 21). Westchester argued that Cobra discharged this obligation by obtaining exactly $2 million of coverage from National Union Fire Insurance Company. Westchester therefore contended that the excess insurance policy issued by Westchester to Cobra for coverage above $2 million did not include Norfolk Southern as an additional insured. I disagreed with Westchester and found that

> [t]he 2008 Lease Agreement does not establish a cap on the insurance Cobra is to obtain. Quite simply, Cobra was required to obtain insurance for the benefit of Cobra and Norfolk Southern, and that insurance could not have a limit of "less than $2,000,000." Cobra could, and did, obtain insurance in excess of $2 million consistent with the terms of the 2008 Lease Agreement. Further, the 2008 Lease Agreement expressly contemplates limits greater than $2 million, as indicated by the parenthetical clause, "(or such greater amount over time so as to be commercially reasonable)."

(Mem. Op. & Order [Docket 96], at 6).

Westchester now moves that I reconsider that decision based on what it characterizes as "new evidence." Two days before I entered the summary judgment opinion, Westchester received a series of letters wherein Norfolk Southern stated to Cobra its "insurance requirements" under the Ben Creek Spur lease agreement. The letters are generally the same and state in pertinent part:

> **A COMPLETE LISTING OF OUR INSURANCE REQUIREMENTS IS ON THE REVERSE SIDE OF THIS NOTICE**
> . . . .
>
> Your Building/Land Lease Agreement referenced on the front of this notice requires that you provide evidence of one or more of the following insurance coverages as indicated below:
> . . . .
>
> **COMMERCIAL GENERAL LIABILITY (CGL) (Occurrence Form):**

>     Additional Insured Required.
>        $2,000,000 General Aggregate
>        $2,000,000 Each Occurrence
>
> **FAILURE TO COMPLY WITH THESE INSURANCE REQUIREMENTS WILL RESULT IN THE CANCELLATION OF YOUR AGREEMENT.**

(*See* Second Notification [Docket 100-2], at 2-3). Westchester contends that these letters "are evidence, if not conclusive proof, that $2 million in coverage was all that Cobra was obligated to purchase under the 2008 Lease Agreement." (Westchester's Mem. in Supp. of Mot. to Reconsider [Docket 100], at 6). Westchester further argues that the letters at least show that "there are material questions of fact as to the parties' course of dealing under the lease and their understanding of the relevant language" to preclude summary judgment. (*Id.*).

**II. Legal Standard**

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Notwithstanding that precept, it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." *In re: C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 649 (S.D. W. Va. 2013).

Although a "motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion," this district has been "guided by the general principles of Rules 59(e) and 60(b)" in determining whether a Rule 54(b) motion should be granted. *Shrewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998) (Haden, J.). The Fourth Circuit has

recognized three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Motions to reconsider "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* Finally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2810.1, at 124 (3d ed. 2012)).

**III. Analysis**

Although the letters in question are "new evidence" in the sense that they were not available at the time the court ruled on the parties' motions for summary judgment, they do not alter my earlier ruling because they are parol evidence.

"When a written contract is clear and unambiguous, the declarations of the parties, as to what they intended by the language used, are inadmissible." *Kanawha Banking & Trust Co. v. Gilbert*, 46 S.E.2d 225, 233 (W. Va. 1947). "Except in cases of fraud or mistake, parol evidence can not be admitted to vary, contradict, add to or explain the terms of a complete and unambiguous lease, by proving that the agreement of the parties was different from what it appears upon the face of the lease." Syl. pt. 2, *Collia v. McJunkin*, 358 S.E.2d 242, 243 (W. Va. 1987)

The letters between Norfolk Southern and Cobra are not part of the lease agreement, so they are parol evidence. *See Kanawha Banking & Trust Co. v. Gilbert*, 46 S.E.2d 225, 233 (W. Va. 1947) ("Parol evidence . . . is such as is not furnished by the document itself but is derived from outside sources."). In my Memorandum Opinion and Order [Docket 96], I interpreted the

provisions of the lease according to its unambiguous terms. I did not find that the lease was ambiguous. Therefore, parol evidence regarding Norfolk Southern's intent is inadmissible and will not be considered by the court in construing the terms of the lease agreement. Because Norfolk Southern's letters will not be considered by the court, there is no reason to reconsider my ruling that Norfolk Southern qualifies as an additional insured under the Westchester's excess policy.

### IV. Conclusion

For the reasons stated above, Westchester's Motion to Reconsider [Docket 99] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE